PHILLIPS *v.* PHILLIPS.

5-2884                                              365 S. W. 2d 261

Opinion delivered March 4, 1963.

*G. W. Lookadoo* and *M. C. Lewis, Jr.,* for appellant.

*Sam L. Anderson,* for appellee.

SAM ROBINSON, Associate Justice. Appellant, Maggie Phillips, and appellee, Henry Phillips, married April 19, 1946. Henry filed this suit for divorce on October 7, 1958. Maggie filed an answer and cross complaint denying the allegations of the complaint and asking that she be granted a divorce. The trial court denied Henry a divorce on his complaint, but granted Maggie a divorce on the cross complaint. Neither side has appealed from that part of the decree granting the divorce, but property rights are involved and Maggie has appealed from that part of the decree dealing with the property, and the failure of the court to award alimony, and has asked for an additional attorney's fee.

At the time of the marriage, Maggie owned a piece of property of almost a city block in area on Albert Pike Street in Hot Springs, hereinafter called the Albert Pike property. This property, obtained by Maggie in a settlement with a former husband, cost $6,500.00; $2,500.00 had been paid on the purchase price, leaving a balance of $4,000.00 owed at the time of the conveyance to Maggie.

About two months after the marriage to appellee, Phillips, Maggie conveyed the property to a third party, who in turn conveyed it to Maggie and appellee as an estate by the entirety. In explaining her reason for creating the estate by the entirety in the property, at one point Maggie testified: ''Well, you see, it was like this: He said to me, 'if something would happen to you,' he wouldn't get anything, so he wanted to have his name on the deed, and he promised me he'd be good to me, and I said, 'Well, all right then, we'll just put your name on, add your name on the deed,' and we just added his name on the deed.''

At another point she testified:

"Q. . . . Will you state why that transaction took place, why the deeds were made which put title in Mr. Phillips' name?

A. Yes, because, you see, he told me when we got married, you see, that I put his name on the paper because he told me if I didn't, well, he didn't feel like working, didn't feel like helping, and he was always fussing, so I thought if it would take that to go ahead and get along, you know, as wife and husband should get along, I'd put his name on, and I thought that any time he didn't do right, I could take it back off, see. Instead it wasn't that way, and then after I put his name on there, he started getting smart and not doing right."

Again she testified:

"Q. Would you have put his name on the property other than the fact that you all were married?

A. No, I put his name only in there because he said that if I would put his name in there he would be good to me, and he was a fussin' all the time so I put his name on there."

Maggie contends first, that an estate by the entirety was created in the property in consideration of, or by reason of the marriage, and that the property should be reconveyed to her in pursuance to Ark. Stats. 34-1214 which provides: "In every final judgment for divorce from the bonds of matrimony granted to the husband, an order shall be made that each party be restored to all property not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof; and where the divorce is granted to the wife the court shall make an order that each party be restored to all property not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof; . . . "

The above part of Ark. Stats. 34-1214, adopted in 1893, was copied from Section 462 of the Kentucky Code of Practice, adopted by Kentucky in 1854. In *Phillips* v.

*Phillips,* 9 Bush (Ky.) 183, and *Flood* v. *Flood,* 5 Bush (Ky.) 167, the Kentucky Court construed Section 462 to mean: " . . . the word 'consideration' in this act, [means] 'the act of marriage, or some agreement or contract touching or relating to the act of marriage,' and the expression 'by reason thereof' 'to relate to such property as either party may have obtained from or through the other by operation of the laws regulating the property rights of husband and wife.' "

Subsequently, in 1876, Kentucky adopted Section 425 of the Code which amended the 1854 act by adding the words "and any property so obtained without valuable consideration shall be deemed to have been obtained by reason of the marriage."

In *McNutt* v. *McNutt,* 78 Ark. 346, 95 S. W. 778, it was pointed out that our statute 34-1214, passed by the General Assembly in 1893, was adopted from Kentucky's 1854 Code and not from the Kentucky Code as amended by the act of 1876; that at the time of our adoption of the Kentucky Code it had been construed as above mentioned in the Phillips and Flood cases, and that we adopted along with the act the construction which had been placed on it by the Kentucky Court. The McNutt case has been followed consistently. *Dickson* v. *Dickson,* 102 Ark. 635, 145 S. W. 529; *Harbour* v. *Harbour,* 103 Ark. 273, 146 S. W. 867; *Turner* v. *Turner,* 219 Ark. 259, 243 S. W. 2d 22; *McClure* v. *McClure,* 220 Ark. 312, 247 S. W. 2d 466.

It will be seen from the testimony of Mrs. Phillips in the case at bar, that the estate by the entirety was not created in consideration of the act of marriage. In fact, there is no substantial evidence that the property was ever mentioned or considered by the parties before the marriage, nor was Henry's claimed interest in the property created by reason of the operation of law.

Next, Mrs. Phillips contends that if an interest in the property was not obtained by Phillips in consideration or by reason of the marriage within the meaning of the statute, it was conveyed to him as trustee and that he holds it in trust for her. The conveyance was made to

Phillips 14 years before Mrs. Phillips made any claim that he was holding the property in trust. Even if it is assumed that by reason of the husband and wife relationship and no consideration being paid, Phillips was holding an interest in the property in trust for his wife, the direct testimony, including that of Mrs. Phillips, along with the circumstantial evidence, overcomes such presumption and proves by a preponderance of the evidence that the conveyance to Phillips was an outright gift. The effect of Mrs. Phillips' testimony on that point is that Mr. Phillips did not want to do any work on the property unless he owned an interest, and for that reason in addition to his promise to be good to her, and to keep peace in the family, she made the conveyance.

In *Spradling* v. *Spradling,* 101 Ark. 451, 142 S. W. 848, the Court said: "A wife, however, may make a direct gift or transfer of her property to her husband, and it will be sustained if not made through improper or undue influence. If the evidence clearly shows that it was the intention of the wife by such transfer to make a gift to her husband, then such transaction will be upheld. In such cases inquiry will be directed to the circumstances under which the instrument of transfer was executed by the wife. If it clearly appears that the transaction between the husband and wife was fairly entered into, and it was her intention to make him a gift, it will be held as binding as a transaction made between other parties."

The enhancement in value of the property is not, in itself, sufficient to show the intention of the parties, but it does shed some light on the intention of the parties when borrowing money to improve the property. Mrs. Phillips owned only a $2,500.00 equity in the property at the time of the conveyance of the interest to Phillips. Subsequently, considerable improvements were made and the property is now worth between $50,000 and $75,000. Money was borrowed on the property several times for the purpose of buying and improving other property and to improve the Albert Pike property. Phillips signed the notes and obligated himself personally for the repayment of such loans. There is no showing that Mrs. Phil-

lips ever informed the banks at the time of obtaining loans that Phillips was not a *bona fide* owner of an interest in the property. We cannot say that the Chancellor's finding that Phillips owns an estate by the entirety is contrary to a preponderance of the evidence.

In the year 1958, the parties borrowed money on the Albert Pike property for the purpose of constructing a store building on leased property located on Highway 270 in Garland County, west of Hot Springs, and to open a store in the building. Henry claims that he is the sole owner of the 270 store, and Maggie contends that she is a partner in that business. The Chancellor found in favor of Henry on this point. We have reached the conclusion that the preponderance of the evidence supports Maggie on this issue.

Ever since they were married, with the exception of one period of about a year, Henry and Maggie have operated a store at one place or another. Maggie is the one that had the "know how". She had been operating a store or a market since she was a teen age girl. About 1953 they borrowed the necessary money and built a brick store building on the Albert Pike property. Later they sold the store to one Johnson. During the time Johnson was operating the store on the Albert Pike property, Henry and Maggie decided to open the store on Highway 270. It was then that they borrowed money, both being obligated for its repayment, and built and opened the 270 store.

The store was opened in December and Maggie worked there until about the following May. In the meantime Johnson had given up the store on the Albert Pike property and Maggie opened it again. In June she had to go to the hospital for an operation, and while there, Henry moved all the groceries and most of the fixtures to the 270 store.

Maggie was certainly a partner in establishing the 270 store and the evidence does not show that the parties dissolved the partnership, nor has it been dissolved by operation of law. Therefore, the parties are still partners in the 270 store, and Maggie is entitled to an ac-

counting from Henry on the operation of the store. Likewise, since Henry is an owner of an estate by the entirety along with Maggie in the Albert Pike property, he is entitled to an accounting from her on that property. Appellee makes no contention that Maggie is not the owner of the store on the Albert Pike property.

Maggie was granted the use of the house in which she lives, rent free, but was awarded no alimony. We believe that since she was awarded no alimony, she should also have rent free, that part of the store building in which she operates a store.

Appellant was allowed an attorney's fee of $650.00 in the trial court. She is allowed an additional sum of $500.00 as attorney's fee in this court.

The cause is reversed with directions to enter a decree not inconsistent herewith.